# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

v.   CASE NO. 4:24cr22/RH

DONOVAN ARTHUR SAULEDA

_____

## RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

COMES NOW, the United States of America, by and through the United States Attorney for the Northern District of Florida, and respectfully responds to the Defendant's motion to suppress evidence. Defendant Sauleda has not established that the evidence against him should be suppressed under the Fourth Amendment, case law of this Circuit, or Rule 41, Fed. R. Crim Proc. Thus, Sauleda's motion to suppress should be denied in full.

## STATEMENT OF FACTS

On November 15, 2021, the Wakulla County Sheriff's Office partnered with the United States Marshal Service Sex Offender Investigations Branch to conduct Operation Checkmate, ensuring the statutory compliance of all registered sex offenders residing in Wakulla County. (ECF 38, Exhibit 1 – p. 3.) On January 26, 2022, Sauleda, who is a registered sex offender and was still on probationary status as a result of the sex offense conviction, came to law enforcement's attention

because of several discrepancies in the information collected during the operation. (Id.) Sauleda was convicted on December 11, 2013, of Traveling to Meet in Minor (for the Purpose of Engaging in a Sexual Act) in violation of Florida Statute 847.0135(4)(a), Solicitation of a Minor Via Computer in violation of Florida Statute 847.0135(3)(a), and two counts of Possession of a Controlled Substance with Intent to Sell/Deliver in violation of Florida Statute 893.13(1)(a)(1) & (a)(2).

Using the Transunion Locator Service (TLO) database, Sauleda's name was queried and seven phone numbers and two email addresses were listed with a "high probability" of ownership according to the database. (Id.) The phone numbers and email addresses were not registered to Sauleda in accordance with his sex offender requirements. (Id.) TLO also identified multiple social media connections including the following usernames "Hothourssedick4u," "webcamgod," "webcamgodxxx," and "Arthur Eden," which were used on the social medial platforms Twitter, Snapchat, Chaturbate, and Skype. (Id.)

Using an undercover Twitter account, Detective Patrick Fleming, then with the Wakulla County Sheriff's Office (WCSO), accessed the publicly accessible Twitter account profile "Arthur Eden." Detective Fleming noticed that the picture for the profile depicted a slender black male with dreadlock style hair. (Id.) The image closely resembled the known image of Sauleda maintained by the Florida Department of Law Enforcement Sex Offender Database. (Id.) Reviewing the

images, Detective Fleming also noticed a tattoo on the left ankle of the individual. The date "1986" was seen in the image of the tattoo. (Id.) Sauleda was known to have "Born in Miami" and "Since 1986" tattooed on his left ankle. (Id.) Also listed on the Twitter page was a link to a second website "https://allmylinks.com/arthureden," which appeared to be an index of online identities and social media accounts. (Id.) The page contained 73 links to various profiles. (Id.)

Based on this information, Detective Fleming sought warrants for the social media accounts identified in the Exhibits attached to the Defense Motion to Suppress. (ECF 38). Indeed, the warrants compelled "all content" associated with the account, and specified the accounts were used contrary to the law – specifically, "failing to register internet identifiers pursuant to Chapter 943.0435.4e1 Florida State Statute." (ECF 38, Exhibit 6 – p. 2.)

The production from the Twitter account URL "https://twitter.com/ArthurEdenXXX," handle "@ArthurEdenXXX" and screen name "Arthur Eden," included the following categories of information as provided by Twitter: "deleted direct messages group media," "deleted direct messages media," "direct messages group media," "direct messages media," "profile media," "tweet media," and .txt files of "account creation," "account," "deleted direct

messages group," "deleted direct messages," "direct messages group," "direct messages," "ip audit," "phone number," and "tweet."

Sauleda did not use his name in connection with the account. For example, the "account.txt" file produced by Twitter provides:

```
"accountId" : "949130728884891648",
"createdAt" : "2018-01-05T04:09:34.582Z",
"email" : "webcamgodxxx@gmail.com",
"createdVia" : "oauth:268278",
"username" : "ArthurEdenXXX",
"accountDisplayName" : "Arthur Eden 🏆 🔞"
```

In reviewing the production to determine if the account was controlled by Sauleda and what information would substantiate the connection, Detective Fleming came across a video that depicted what appeared to be an underage male engaged in oral sex with an age indeterminate female. Further review showed that the account user received the video on December 9, 2021, during the following conversation:

| | |
|---|---|
| Unknown Account: | Do you like CP [Initiated: 2021-12-09 T 07:39:00.753Z] |
| | I have CP on telegram |
| | If u want videos |
| | Here's a sneak peek |
| | [video name removed for the purposes of this motion] [Transmitted: 2021-12-09 T 07:46:35.087Z] |

4

| Sauleda[1]: | Don't know what you are referring to but if you are interested in my services my Telegram is 7864759017 @webcamgod |
| --- | --- |
| | And if you are into taboos I entertain all. HUGE perv and PROUD here ?????? |
| | Hail ?? |
| | Private Messengers only |
| | Also my WhatsApp is +1 8503453564<br>I have a very specifics safe way I go about such business [Terminated: 2021-12-09 T 10:58:21.784Z] |

On March 21, 2022, Detective Fleming sought a residential search warrant for Sauleda's residence (and electronic devices found therein) based on probable cause to believe that the residence would contain evidence of Possession of Child Pornography.[2]

LAW AND ARGUMENT

1. <u>The Warrant to Search Sauleda's Social Media Accounts Was Not Overbroad</u>

"The Fourth Amendment requires that 'those searches deemed necessary should be as limited as possible,'" *United States v. Blake*, 868 F.3d 960, 973 (11th

---

[1] In the Twitter production, the sender and recipient are identified by the unique account Id number.
[2] When executing the search warrant on March 22, 2022, law enforcement found child sex dolls and "other materials indicative of child exploitation in" Sauleda's bedroom. (ECF 38 – Exhibit 7, p. 6.) On March 22, 2022, law enforcement presented a supplemental search warrant in order to seize the additional material described in paragraphs 18 and 19 of the supplemental warrant. The original warrant and supplemental warrant are otherwise identical.

Cir. 2017) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)), so all warrants must state with particularity the places and persons to be searched or the things to be seized. *United States v. Travers*, 233 F.3d 1327, 1329 (11th Cir. 2000). A warrant "is considered sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Bradley*, 644 F.3d 1213, 1259 (11th Cir. 2011). A warrant that does not sufficiently particularize the place to be searched and the things to be seized is unconstitutionally overbroad, and the evidence seized must be excluded. *Travers*, 233 F.3d at 1329. Even so, the Fourth Amendment does not require "elaborate specificity," and the particularly requirement is applied with a "practical margin of flexibility" depending on type of property to be seized and the nature of the activity under investigation. *Bradley*, 644 F.3d at 1259 (citing *United States v. Wuagneux*, 683 F.2d 1343, 1349 (11th Cir. 1982)). In assessing the sufficiency of the warrant, the Eleventh Circuit considers whether the description is "as specific as the circumstances and the nature of the activity under investigation permit." *Wuagneux*, 683 F.2d at 1349. The "specific evil" that limitation targets "is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings." *Coolidge*, 403 U.S. at 467. That type of rummaging was permitted during the colonial era by the "general warrant," an instrument "abhorred by the colonists." *Id.* The Fourth Amendment is intended to preclude "general warrants" by "requiring a 'particular

description' of the things to be seized." *Id.* The fact that a warrant is broad does not mean the warrant violated the Fourth Amendment. "[T]he magnitude of a search is insufficient, by itself, to establish a constitutional violation; rather, the relevant inquiry is whether the search and seizures were reasonable under all the circumstances." *Wuagneux*, 683 at 1352.

Contrary to Sauleda's argument, the warrants for the social media accounts were as particularized as possible in order to identify whether Sauleda was using the accounts in violation of his sex offender registration requirements, and any alleged breadth of the warrants was necessitated by the circumstances of the investigation. Sauleda was using pseudonyms such as "Arthur Eden," "webcamgod," and "officialarthureden" as his user name. Other than the publicly available images seen observed by Detective Fleming that appeared to be Sauleda, Detective Fleming had no other information with which he could more particularize the warrants.

The circumstances here are similar to those in *United States v. Alford*, 744 Fed.Appx. 650, 652 (11 Cir. 2018), where the challenged warrant sought records from Google, Inc. in order to identify an individual who called a Montana K-Mart. *Id.*, 744 Fed.Appx. at 652. In *Alford*, law enforcement was searching for the identity of a caller when it sought records from Google. Likewise, the Google warrant was not "unnecessarily" broad because law enforcement had no additional information that would have allowed them to further narrow the information sought. *Id.*, 744

Fed.Appx. at 653. The Google warrant was "as specific as the circumstances" permitted. *Id.* There was simply no way to know what information within the social media accounts would lead to identifying Sauleda as the account user, and all of the information requested was potentially incriminating because it could have helped identify the owner of the accounts at issue, just as was the case in *Alford*. In fact, with the Twitter warrant for example, one area that may have logically led to further identifying information were the direct messages Sauleda exchanged with others that were not publicly available. Another source of information that logically may identify the user were the images associated with the account.[3] Thus, the warrants were as narrow as they could have been given the information available to law enforcement.

The facts in the Middle District of Georgia case, *United States v. Mercery*, 591 F.Supp.3d 1369 (M.D. GA 2022) are distinguishable.[4] In *Mercery*, the defendant came under investigation for, and was ultimately charged with, violating 18 U.S.C. § 922(g) for being a felon in possession of a firearm. *Id.* The defendant was involved in several instances over the course of two months involving aggravated assault and domestic violence during which he was alleged to have used a firearm. *Id.* at 1374.

---

[3] In fact, Detective Fleming found a photograph of Sauleda's Driver's License in the Twitter production.
[4] The United States also contends that *Mercery* relied on dicta from *United States v. Blake*, 868 F.3d 960 (11 Cir. 2017) and misapplied *Blake's* holding.

The defendant was ultimately arrested, and a Glock .40 caliber pistol was found in the same location as the defendant. *Id.* at 1375. The pistol matched the description provided by one of the victims. *Id.* The investigating officer then sought a search warrant for an Instagram account that the officer believed belonged to the defendant "based on his familiarity with [the defendant] and observation of multiple photos…posted under the account." *Id.* at 1378-79. Despite the fact that photos and videos produced under the Instagram warrant showed the defendant in possession of what appeared to be the Glock .40 caliber pistol recovered when the defendant was arrested and also showed him in unlawful possession of an AR-15 stye rifle, the court in *Mercery* took issue with the disclosure of 18 categories of information from Instagram, finding that it was "unnecessarily overbroad." *Id.* at 1375, 1381. It does not appear, though, that identity of the account holder was at issue or considered by the court. Moreover, the *Mercery* court appeared to conclude that *Blake* compelled that *Leon* good faith could not apply.

In actuality, the case law of this Circuit under *Blake* is that whether a warrant that compels "disclosure to the government of virtually every kind of data that could be found in a social media account…violates the particularity requirement…is not an open and shut matter." 868 F.3d at 974-975. Therefore, *Leon* good faith reliance on a warrant that is properly sought and obtained is justified. In *Blake*, the FBI applied for and obtained search warrants for a defendant Facebook account that

required Facebook to disclose virtually every type of data associated with the account without detailing how all of the data was potentially incriminating, and then after that disclosure, authorized the government to seize information that constituted fruits, evidence, and instrumentalities of a specified crime from that cache of data. *Blake*, 868 F.3d at 966-67. In dicta, the Eleventh Circuit expressed its concern that this two-stage procedure violated the particularity clause and essentially amounted to "the internet-era version of a 'general warrant.'" *Id.* at 974. Nonetheless, the court did not decide whether the Facebook warrants at issue violated the Fourth Amendment because the warrants fell within the Leon good-faith exception. *Id.* Specifically, the court found (1) that the warrants were supported by probable cause and (2) that whether or not they violated the particularity requirement was "not an open and shut matter." Id. at 975 ("[I]t is a close enough question that the warrants were not so 'facially deficient' that the FBI agents who executed them could not have reasonably believed them to be valid.").

Moreover, the Fourth Amendment's particularity requirement does not demand that a warrant be perfect. *United States v. Martinez-Martinez*, 777 F. App'x 441, 444 (11th Cir. 2019) (per curiam) (stating that the "particularity standard 'does not necessitate technical perfection' ") (quoting *Bradley*, 644 F.3d at 1259); *see also United States v. Ulbricht*, 858 F.3d 71, 100 (2d Cir. 2017) ("T]he Fourth Amendment does not require a perfect description of the data to be searched and seized," and "a

search warrant does not necessarily lack particularity simply because it is broad."), *abrogated on other grounds by Carpenter v. United States*, 138 S. Ct. 2206 (2017). Courts must instead look at search warrants as a whole and in a realistic and practical manner, and "should not invalidate [a] ... warrant by interpreting [the supporting] affidavit in a hypertechnical, rather than a commonsense, manner." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (internal quotation marks and citations omitted). This is because affidavits and warrants "are frequently drafted under time pressure, often by police or persons without legal training, and ... must frequently express complex thoughts." *Nat'l City Trading Corp. v. United States*, 487 F. Supp. 1332, 1336 (S.D.N.Y. 1980), *aff'd*, 635 F.2d 1020 (2d Cir. 1980). As a result, warrants "cannot properly be subjected to the same standards of dissection as might befit a criminal statute, an indictment, or a trust indenture." *Id.*

2. Even if the Warrant was Overbroad, it was Relied on in Good Faith Under Leon

The exclusionary rule "is not a personal constitutional right," rather it is a "prudential doctrine," whose "sole purpose . . . is to deter future Fourth Amendment violations." *Davis v. United States*, 564 U.S. 229, 236 (2011); accord *United States v. Smith*, 741 F.3d 1211, 1218 (11th Cir. 2013), cert. denied, 574 U.S. 1026 (2014). That is, the exclusionary rule is a judicially created remedy of the Supreme Court's own making and the Supreme Court and the Eleventh Circuit have rejected the argument that exclusion of evidence is a necessary consequence of a Fourth

Amendment violation. *Davis*, 131 U.S. at 229; *Smith*, 741 F.3d at 1218-19.

Accordingly, even where a search warrant affidavit fails to establish probable cause, the exclusionary rule does not bar admission of evidence seized in reasonable good faith reliance on a search warrant subsequently held to be unsupported by probable cause. *United States v. Leon*, 468 U.S. 897, 905, 913, 919-922 (1984); *United States v. Taxacher*, 902 F.2d 867, 871 (1990). The *Leon* good faith exception is a broad exception and "searches conducted pursuant to warrants will rarely require suppression . . . ." *Taxacher*, 902 F.2d at 871; accord *Leon*, 468 U.S. at 920-21. The *Leon* good faith exception applies in all but four limited sets of circumstances. *Leon*, 468 U.S. at 923; *United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002). The four sets of circumstances are:

> (1) where the magistrate . . . issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role . . . ;(3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstance of the particular case, a warrant is so facially deficient -- i.e., in failing to particularize the place to be searched or the things to be seized -- that the executing officers cannot reasonably presume it to be valid.

*United States v. Morales*, 987 F.3d 966, 974 (11th Cir. 2021) (quoting *Martin*, 297 F.3d at 1313). If none of those four sets of circumstances exist and the officers

executing the search warrant reasonably relied upon the warrant, the *Leon* good faith exception to the exclusionary rule applies. *Id.* at 974.

The proper inquiry regarding the third *Leon* circumstance is whether a reasonably well-trained law enforcement officer, as opposed to a judge, could believe in objective good faith that the search warrant affidavit established probable cause. <u>Taxacher</u>, 902 F.2d at 871-72. What would be objectively reasonable for a law enforcement officer is not necessarily the same as what would be reasonable for a jurist. *Id.* at 872. Moreover, the threshold for establishing the third *Leon* circumstance is high, and the occasions on which it will be met are rare. *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012). Even where the facts in the search warrant affidavit "leave much to be desired," the *Leon* good faith exception applies as long as "it was *not entirely unreasonable* for [the officer/affiant] to believe that what he wrote in the affidavit would be sufficient to support a finding of probable cause." *Martin*, 297 F.3d at 1315 (emphasis in original); accord *Messerschmidt*, 565 U.S. at 547-53; *Leon*, 468 U.S. at 923. As long as objective circumstances justify a search, or in this case make it such that it was not entirely unreasonable to believe the search was justified, the exclusionary rule does not bar the items seized in the search. *Messerschmidt*, 565 U.S. at 547-53; *Leon*, 468 U.S. at 919-20, 922-23 & n. 20.

While the third *Leon* circumstance requires more than the absence of probable cause, the law regarding probable cause is a relevant starting point to consider the issue. "Probable cause exists when under the 'totality-of-the-circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir. 1991) (en banc) (quoting *Gates*, 462 U.S. at 238). "In other words, probable cause exists where the facts lead a reasonably cautious person to believe that the search will uncover evidence of a crime." *Tobin*, 923 F.2d at 1510 (internal quotations omitted). Probable cause is a doctrine of reasonable probability, not certainty, and should be judged not with clinical detachment, but with a commonsense view to the realities of normal life. *See Craig v. Singletary*, 127 F.3d 1030, 1042 (11th Cir. 1997) (en banc). The duty of this court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213 (1983). The government has met the probable cause standard in this case.

## CONCLUSION

In short, because Sauleda cannot show a constitutional violation in terms of the warrants' breadth, his motion should be denied.

RESPECTFULLY SUBMITTED this 10th day of December, 2024.

> JASON R. COODY
> United States Attorney
>
> ***/s/ Meredith L. Steer***
> MEREDITH L. STEER
> Assistant United States Attorney
> South Carolina Bar No. 105392
> 111 North Adams Street, Fourth Floor
> Tallahassee, FL 32301
> (850) 942-8430

## CERTIFICATE OF WORD COUNT COMPLIANCE

I HEREBY CERTIFY there are 3,216 words in this response filed by the Government, pursuant to Local Rule 7.1(F).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been filed with the Clerk of Court via electronic filing, which will provide service upon defense counsel of record, Assistant Federal Public Defender Elizabeth L. Vallejo.

> ***/s/ Meredith L. Steer***
> MEREDITH L. STEER
> Assistant United States Attorney